## Ewald *v.* Fidelity Title & Trust Company, Appellant.

*Landlord and tenant—Distress—Illegal distress—Picking lock.*

1. Where a landlord and his agent picks the lock of an outer door of the demised premises for the purpose of distraining the tenant's goods he commits an illegal act and the distress thus made is contrary to law and invalid.

2. In an action of replevin for goods distrained under a landlord's warrant, the undenied averments of the statement of claim are admissible in evidence at the trial, if it appears that the landlord himself

in his lifetime had sworn to the affidavit of defense. Such a ruling is vindicated by sec. 6 of the Act of April 19, 1901, P. L. 88.

3. Where in an action of replevin the plaintiff offers the undenied averments of the statement of claim, and an objection to the offer is overruled, but no exception is taken to the action of the court, the ruling cannot be assigned for error nor can it be reviewed on a motion for judgment for defendant non obstante veredicto.

Argued April 27, 1910. Appeal, No. 153, April T., 1910, by defendants, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1905, No. 685, for plaintiff non obstante veredicto in case of J. B. Ewald v. Fidelity Title & Trust Company of Pittsburg, Ella B. Kirk and Walter M. Kirk, Executors of the last will and testament of David Kirk, deceased, and D. M. Saylor, Constable. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Replevin for goods alleged to have been unlawfully distrained.

Verdict for defendants for $162.45. The court subsequently entered judgment for plaintiff non obstante veredicto.

*Errors assigned* were in admitting in evidence the undenied averments of the statement of claim, and in entering judgment for plaintiff non obstante veredicto.

*A. B. Reid,* with him *A. V. D. Watterson,* for appellants.

*Charles A. Lambie,* with him *William A. Griffith* and *David E. Mitchell,* for appellee.

OPINION BY RICE, P. J., July 20, 1910:

This was an action of replevin for goods distrained under a landlord's warrant. The plaintiff's statement contained the following material averment, after averring his title to the goods: "Whereupon the said landlord issued a landlord's warrant against the said plaintiff and

levied upon the goods hereinabove designated at a time when the said plaintiff and his wife were away from the said premises, and in order to make said levy picked the lock of the kitchen door of the said apartment and entered the same and immediately took the locks off the kitchen door and the front door and placed a watchman in charge of said premises and prevented said plaintiff from entering his own apartment for a period of 5 days, and until more than 24 hours after said writ of replevin had been issued and placed in the hands of the sheriff for service." The defendant denied in his affidavit of defense that "anything was done under said landlord's warrant, either by himself or said constable, except that which they were authorized to do under the laws of this state." But he did not deny the specific allegations of fact above quoted; so that this portion of the affidavit must be regarded as merely a denial that a distress made in that way was contrary to law. Upon this subject the learned judge said: "Unquestionably if the landlord had broken the lock in order to gain entrance into the house to make the levy, it would have been an unlawful act, and we fail to see any distinction between the breaking of the lock and the picking of the lock. We are of opinion that the admitted facts in this case show that the landlord was a trespasser in making the levy, and that the levy was, therefore, illegal." We concur in this conclusion. The distinction between such a mode of gaining entrance to distrain and entering by an open window or by an outer door by the usual means adopted by persons having access to the building, as, for instance, the mere lifting of a latch, or the turning of a key left in the door, or the drawing back of a bolt, is pointed out in Jackson and Gross on Landlord and Tenant, secs. 1157–1158, and the cases cited in the notes. Even as to some of the latter modes of entering the cases are not entirely harmonious. But no case has been cited (and, on principle, we do not see how there could be one) which holds that it is lawful for the distrainor, when entering in the first instance to distrain,

to pick or break the lock of an outer door, or that there is any essential distinction between the two modes of gaining entrance. The thought was well expressed by Judge McPHERSON as follows: "If a man merely latches his door, or if he purposely leaves the key in the lock upon the outside, he may perhaps be regarded as inviting all persons to enter his house who have business therein. But, however that may be, he certainly is not extending an invitation to enter if he locks the door and carries the key away in his pocket. Instead of making it easy to enter, he is thus doing all that he can to prevent an entrance; and if his landlord afterwards picks the lock or (as in the case before us) avails himself of another key which happens to fit, he does a legal wrong as completely, and of the same kind, as if he broke down the door with a hammer:" Murray v. Vaughn, 4 Pa. Dist. Rep. 631. See, also, 24 Cyc. of Law and Procedure, 1313; Williams on Landlord and Tenant (2 ed.), 106–107.

Appellants' counsel refer to certain provisions of the lease relative to the right of the landlord to re-enter and dispossess the tenant; but none of these provisions expressly reserves the right of entry to distrain by breaking down the outer door or by picking the lock, and we are of opinion that they cannot be extended, by implication, to justify a mode of entry to distrain which otherwise would be unlawful. Moreover, the affidavit of defense does not distinctly set up these provisions as justification for the entry, but expressly or by implication admits that the entry was made for the purpose of distraining for rent in arrear.

It is alleged in the second assignment that the court erred in admitting in evidence the undenied averments of the statement of claim. In support of this assignment it is argued that the landlord, David Kirk, having died before the trial, the admission of the evidence was tantamount to the admission of the testimony of the plaintiff himself, contrary to the law which prevents him from testifying as to matters occurring before the death of the

other party. This contention cannot be sustained. The affidavit of defense was made by David Kirk, and the significance of the evidence consists in the fact that he did not deny, but virtually admitted, the averments of the statement of claim under consideration. In further support of this assignment appellants' counsel cite May v. Newingham, 17 Pa. Superior Ct. 469, which case was tried before the passage of the act of 1901 hereinafter referred to. The point decided in that case was, that a rule of court providing that in actions founded on contracts statements of fact in the pleadings, verified by affidavit, shall be taken as conclusive at the trial, if not denied by a proper plea, verified by affidavit, does not apply to an action of replevin. The same seems to be true of the rule of court quoted in the appellants' brief: Digby's Rules of Court, 14. But the ruling complained of does not depend for its vindication upon a rule of court. The Act of April 19, 1901, P. L. 88, relating to replevin, extends the right to take judgment for want of sufficient affidavit of defense to that action, and sec. 6 expressly provides that the declaration and affidavit of defense as originally filed, or as amended by leave of court, shall constitute the issues under which, without other plea, the questions of title to, or right of possession of, the goods and chattels as between all the parties shall be determined by the jury. If the defendant in his affidavit of defense had expressly admitted the allegations of the statement of claim heretofore quoted, clearly such admission could have been offered as evidence of the facts alleged. Virtually the same result was reached by the manner in which the issue was made up. As already pointed out, the affidavit did not deny the facts alleged, and when the portion of the statement of claim was offered in evidence the objection was not made that the facts could not be proved in that way, but the invalid objection was made that the facts were denied. As shown by the assignment of error, the offer was confined by the court to the undenied averments of fact; and to the ruling admitting the offer no exception

was taken. We are of opinion, (1) that the ruling, not having been excepted to, could not be assigned for error; and (2) that under the circumstances the defendant was not in a position to question the competency of that method of proving the fact upon the hearing of a motion for judgment non obstante or upon appeal. The proper mode of raising the question as to the method of proof, was by exception to the ruling, and, as we have said, none was taken. If an exception had been taken, the principle referred to in the second paragraph of the syllabus of Liquid Carbonic Co. v. Truby, 40 Pa. Superior Ct. 634, might perhaps have been applicable. But, clearly, the act of 1905 was not intended to provide a mode for reviewing rulings upon evidence which were not excepted to at the time they were made.

All the assignments of error are overruled and the judgment is affirmed.