# M. E. Pickering Company, Appellant, *v.* Friedman Realty Company.

*Landlord and tenant—Lease—Distress—Closed premises—Distress after sunset—Burden of proof—Evidence.*

1. Where a lease provides that "if the premises at any time be deserted or closed, the lessor may enter by force" and distrain for rent, such premises will be deemed "closed" within the meaning of the

lease where it appears that the bailiff visited the premises a number of times during a period of eight days without getting in, and that he finally secured an entrance by putting his hand through a hole in a glass part of a door, and unlocking a spring lock; and this is so although other evidence showed that the premises had not been "deserted" in the sense that the lessee had forsaken them with the intention not to return.

2. A lawful distress cannot be made after sunset and before sunrise; but if a distress otherwise lawful and regular has been made, the landlord will not be deemed a trespasser, and the distress unlawful and of no avail, if he does not prove affirmatively, in an action of replevin for the goods distrained, that the distress was made between sunrise and sunset.

Argued April 16, 1914. Appeal, No. 39, April T., 1914, by plaintiff, from judgment of C. P. Allegheny Co., Nov. T., 1911, No. 544, on verdict for defendant in case of M. H. Pickering Company v. Friedman Realty Company, impleaded with Edna Kane, otherwise known as Edna Lewis. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Replevin for goods distrained. Before McFARLANE, J.

From the record it appeared that on October 13, 1911, W. J. Morris, as bailiff of the Friedman Realty Company, agents, served a landlord's warrant for $200 on Edna Lewis at 421 Second avenue. He did this by entering an outer door to the premises from an alley in the rear, the door being locked by a Yale lock. He opened this door by inserting his hand through a lower pane or partition of a sash, which composed the upper part of the door, from which the glass had been broken by some one, and pushing aside a wire screen which covered and protected the sash in the door he thus reached the Yale lock on the inside, turning it, opened the door and entered; after which he went through the house and levied or distrained upon all the goods on the premises. The lease for the premises contained the following clause:

"If the premises at any time be deserted or closed, the

lessor may enter by force without liability to prosecution or action therefor, and may distrain for rent and also re-let the premises as agent for the tenant for any unexpired portion of the term, and receive the rent therefor and apply it on this lease."

On October 25, 1911, M. H. Pickering Company, the bailor of the most of the goods upon the premises which had been levied upon under the landlord's warrant, issued a writ of replevin under and by virtue of which the goods distrained were replevied and delivered to said M. H. Pickering Company.

At the trial the landlord in proving his claim did not prove the time of day the distraint was made.

At the trial the following request was made.

Mr. Buchanan: I would make one other suggestion, your Honor, and that is, that an essential and material part of the defendant's case is to show not only the landlord's warrant was levied upon a certain day, but that it was levied on that day between sunrise and sunset, and there is not anything here, no evidence to show when this levy was made, and the burden is upon the landlord to show it.

The Court: We will not instruct the jury that it is necessary for the defendant to affirmatively show that this was done between sunrise and sunset. The points are refused. [1]

The court charged, inter alia, as follows:

[The next step is not disputed, that Mr. Morris received the landlord's warrant and went down and distrained the goods. The single question is: In doing that, was he a trespasser? Did he commit a trespass? His testimony is that the back entrance to this property is a door, leading into the alley. As I understand it, it was something that you could not climb over, the whole place was inclosed away up to the building somewhere; apparently a side alleyway, or passageway, into the place. Whether it was covered he, and the young man

who was with him, do not know. A witness called for the plaintiff said it was. He said it was sort of a shed or outside kitchen, and I have the impression that the bell was on the inner door, but it is not material.

In the door leading into the alley there was a glass that had been broken, and both the witnesses say there was a snap lock, and that Mr. Morris put his hand through this opening and opened that lock. If that is all there was to the case, he would be entering the premises in a way that would constitute him a trespasser. He would have no right to do that, and the landlord would have no claim here, but the lease makes this provision: "if the premises at any time be deserted or closed, the lessor may enter by force without liability to prosecution or action therefor, and may distrain for rent, and also re-let the premises, and so forth."

Were these premises deserted or closed? That is your single question in this case, gentlemen. Mr. Morris and Mr. Lichtenstul say that they went down there and found the front of the house closed, and then went around to the back and got in as I have just told you, into this place at the rear, and then found the kitchen door standing open, went in, and the house was all open. They say they went through it, there was no one there. Mr. Morris used the remark in his testimony that the place seems to be vacant. At any rate the testimony of both of them is, that they went through the house and there was no one there.

You have perhaps not deserted premises, as they say she was back there later, they found her there in her room, but it seems there were a considerable number of rooms in that house, and she was out, according to their testimony, no one there, and the house standing in that way. If that is true they had a right to go in, and there was no trespass about it—it would be a proper entry within the meaning of this lease. That is your single question. It has taken a good while to get to that. We have had various matters under discussion,

and some of you saw that we were trying to get at the law of this case, without knowing about this clause in the lease, but it comes down to that.] [2]

Verdict and judgment for defendant.  Plaintiff appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*James T. Buchanan,* for appellant.—In an action of replevin, where the defendants, the constable and landlord, who are found in possession of the goods for which the writ issued, do not deny or contest plaintiff's title or right of possession, but claim a lien thereon by virtue of a distraint for rent lawfully levied, the burden is upon them to prove affirmatively every essential or material requisite to maintain the issue thus raised: Wilder v. Cowles, 100 Mass. 487; Burnham v. Allen, 1 Gray (Mass.), 496; Power v. Russell, 13 Pick. (Mass.) 69; Drumgoole v. Lyle, 30 Pa. Superior Ct. 463.

The distraint must be levied upon a week day, and between the hours of sunrise and sunset: Mayfield v. White, 1 Browne, 241; Aldenburg v. People, 6 C. & P. 212; Brown v. Glenn, 2 Eng. L. & E. 275; Sherman v. Dutch, 16 Ill. Rep. 283.

The presumption was against the landlord to produce evidence: Heffner's Est., 134 Pa. 436.

*James M. Clark,* for appellee.

OPINION BY RICE, P. J., July 15, 1914:

The plaintiff was the bailor, and Edna Kane was the bailee, of goods on the premises leased by Friedman Realty Company, the other defendant, to the latter. These goods were distrained by the landlord for rent in arrear.  After the distress was made the plaintiff issued a writ of replevin against Edna Kane for the goods covered by the bailment, by virtue of which the sheriff

delivered them to the plaintiff. The sheriff, finding the goods in the possession of the bailiff under a landlord's warrant, served these parties, and afterwards an appearance was entered for them. Edna Kane did not appear. The jury were sworn to try the issue between the parties named in the caption of this opinion, and rendered a verdict finding the title of the goods to be in the plaintiff subject to the claim of Friedman Realty Company for rent, interest, and costs, amounting to $228.38, to be paid by the plaintiff. From the judgment on the verdict the plaintiff took this appeal.

1. The plaintiff's principal contention on the trial was that the distress was illegal, and the constable a trespasser, because of the manner of his entry upon the premises, which was very much the same as that which was under consideration in Ewald v. Fidelity Title & Trust Co., 43 Pa. Super. Ct. 593. The learned trial judge charged the jury that this contention must be sustained unless the entry was justified by the clause of the lease which reads: "If the premises at any time be deserted or closed, the lessor may enter by force without liability to prosecution or action therefor, and may distrain for rent," etc. He also submitted to the jury the question whether the premises were deserted or closed, and, after calling their attention to some of the facts testified to by the defendant's witnesses, instructed them that, if they believed these witnesses, their verdict should be for the defendant, but, if not, it should be for the plaintiff. The part of the charge which is quoted in the second assignment of error should be read in connection with the final instructions to which we have alluded. The substance of the uncontradicted testimony was, that the landlord's warrant was issued on October 5, and that the bailiff visited the premises a number of times and was unable to get in until October 13, when he gained entrance through a screen door leading into a covered alley or area-way at the side, by putting his hand through a hole in the glass part of

the door and unlocking the spring lock; after thus getting into the yard he entered the house through the kitchen door, which he found ajar, and made the distress; he found none of the inner doors locked and no one on the premises. In view of the fact that on a later day, when he went to make the appraisement, Edna Kane was apparently living in the house, the facts above alluded to would scarcely warrant the conclusion that at the time of the distress she had "deserted" it, that is, had forsaken it with the intention not to return; and so the learned judge plainly instructed the jury. But the facts as to the conditions at the time of the distress, and when the repeated previous attempts to enter were made, taken together, do warrant the conclusion that the premises were "closed," within the true intent and meaning of the above quoted clause of the lease.

2. It is fairly inferable, from the testimony of the constable as to the time he made the distress and as to the attendant circumstances, taken as a whole, that it was not made after dark, but during the daylight hours of October 13. To speak within bounds, such finding by the jury would not have been clearly unwarranted. But whether it was made between sunrise and sunset of the day, was not shown either directly or inferentially. The subject was not alluded to either in the direct examination or the cross-examination of the witnesses who could have given the information, the trial having been conducted in such manner as to lead the trial judge to suppose that the sole matters really in controversy were the construction and the applicability, under the evidence, of the clause of the lease above considered. But at the conclusion of his charge the plaintiff's counsel suggested that there was no evidence that the distress was made between sunrise and sunset, and that the burden of proving that fact rested on the defendant. In response to this suggestion the learned court stated that he would not charge that it was necessary for the

defendant to prove it affirmatively. Probably all difficulty in this branch of the case would have been avoided if the point had been made earlier in the trial. But, as the plaintiff's counsel had in due time presented a point for binding direction, and as the learned judge did not dismiss the suggestion on the ground that it came too late, we assume that the question specifically presented by the first assignment of error is properly before us for decision.

The plaintiff having proved its ownership of the goods, the burden of proving that it was nevertheless not entitled to the absolute and unqualified possession by reason of a lien acquired by the defendant by a distress for rent, was cast on the latter: Drumgoole v. Lyle, 30 Pa. Super. Ct. 463, 467. Upon application of the principles of that and other cases, it is clear that the burden was on the defendant to make good its lien by affirmative proof of all the facts essential to its asserted right to issue the landlord's warrant in question, and the bailiff's right, by virtue of that warrant, to seize these very goods on October 13. It is not claimed that the proof is lacking in any of these essentials, whether common law or statutory, or that anything was done or omitted, after the distress was made, that invalidated it. But, according to the common-law rule, as stated by Blackstone, "all distresses must be made by day, unless in the case of damage feasant; an exception being there allowed, lest the beasts should escape before they are taken:" 3 Bl. Com. 11. And, according to other authorities cited in the learned and exhaustive brief of appellant's counsel, daytime, as used in this connection, means between sunrise and sunset. We quote from some of these authorities: "It is plain from all the authorities that a distress for rent must be made in the daytime; and the only question is, whether 'daytime' is to be considered as the time after sunrise and before sunset, or after daybreak and before dusk. We think that sunrise and sunset form the true limits. . . .

So far as we can ascertain, there is not a single authority to the contrary, nor any dictum to the effect that a distress may be made before sunrise or after sunset:" Martin, B., in Tutten v. Darke and Nixon v. Freeman, 5 Hurlstone & Norman, 647. "It is also laid down by Coke and other authorities, that distress for rent cannot be made in the night, but in the daytime: (3 Thomas Coke, 254, 142a,) which in note C, same page, is said to be between sunrise and sunset: Mirr. C. 2; S. 26, and 7 Co. 7a. And this, as the note says, to give the tenant an opportunity of preventing the distress by tendering the rent. If then it were true that the rent became absolutely due and payable at sundown on the 31st day of December, and even if distress could be legally made on the same day on which the rent became due, it could not properly have been made in the night:" Fry v. Breckenridge, 7 B. Monroe (46 Ky. 35). "With respect to the taking of the goods, that cannot be justified as for a distress, because no one has a right to make a distress after dark:" Aldenburgh v. Peaple, 6 C. & P. 212. "A man cannot distrain for rent or rent charge in the night (which, according to the author of the Mirrour, is after sunset and before sunrising); because the tenant hath not thereby notice to make a tender of his rent, which possibly he might do, to prevent the impounding of his cattle:" Gilbert on Distresses (4th ed.), 49. He may not distrain before sunrise or after sunset: Jackson & Gross, Landlord & Tenant, sec. 231 (31). It is seen from these and other citations that might be made, that the rule is variously stated, and, therefore, to ascertain its full scope it is pertinent to see how and under what circumstances it has been applied in practice. In all of the reported English and American decisions brought to our notice by counsel, as well as in the unreported case of May, Stern & Co. v. Dailey et al., it affirmatively appeared that the distress was not made between sunrise and sunset, and in some that it was made after dark. None of them, read in the light of the controlling facts, unequivocally decides that

it shall be deemed unlawful if the distrainor does not affirmatively prove that it was made between sunrise and sunset. The principle involved in the adoption of that rule would be very far reaching, and would extend to very many other cases than the present. As pointed out by the learned trial judge, it would oblige the landlord to prove affirmatively that he did not break open a locked door or use any other unlawful means to gain entrance to the premises. Many other pertinent illustrations might be given if the many things the landlord may not do were enumerated. To treat the making of a distress for rent before sunrise or after sunset as an act which will convert a distress, otherwise lawful and regular, into a trespass, and, if proven, will sustain an action for damages or will defeat the landlord's claim in an action of replevin brought by the owner of the goods, is as far as we are positively required to go by the precedents to which our attention has been called in which the common-law rule has been applied. Notwithstanding the able argument of appellant's counsel, we are of opinion that sound principle does not require us to go farther and hold that the landlord must be deemed a trespasser, and the distress unlawful and of no validity, if he does not prove affirmatively that it was made between sunrise and sunset.

The assignments of error are overruled and the judgment is affirmed.