required by the Social Security Act, 42 U.S.C., 1105(b), 42 U.S.C.A. § 1105(b), did himself have prepared and filed a return on form 940 as provided by Revised Statutes 3176, 26 U.S.C. § 1512, 26 U.S.C. A. § 1512. The date of the filing of this return is not shown except that it was filed before the payment of the tax to the State Commissioner on April 30, 1937. The trustee did not object to the amount of the tax claimed by the Collector of Internal Revenue. The Collector filed a claim with the Bankruptcy Trustee on May 12, 1937, for the amount due as of January 31, 1937, as shown by his return on form 940.

The trustee having made the payment to the State Unemployment Reserves Commissioner on April 30, 1937, objects to the claim filed by the Internal Revenue Collector and contends that if he is compelled to pay it, it will be in violation of the Bankruptcy Act, Section 57J, 11 U.S.C.A. § 93(j), which provides that debts owing to the United States "as a penalty or forfeiture shall not be allowed * * *" and the referee has sustained the contention of the trustee. The Collector of Internal Revenue files exceptions to the holding of the referee.

The position of the Collector of Internal Revenue seems to be sustained by the express language of the Social Security Act, 42 U.S.C. § 1102, 42 U.S.C.A. § 1102, which provides that: "The taxpayer may credit against the tax imposed by section 1101 of this chapter the amount of contributions, with respect to employment during the taxable year, paid by him (before the date of filing his return for the taxable year) into an unemployment fund under a State law."

The Social Security Act has been fully discussed in the decision of the United States Supreme Court sustaining its constitutionality handed down on May 24, 1937, Chas. C. Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293, and in the further opinion of the same date, Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327, where the Unemployment Compensation Act of the State of Alabama, Gen. Acts Ala.1935, p. 950, as amended, an act comparable to the California Unemployment Reserves Act, was in question.

When the filing of the return was due on January 31, 1937, the trustee had no deductible claim against the payment of the full tax that was then due. Such credit existed only in the event that he had before that time paid his tax under the state act in which event he could have deducted 90% of such tax from that due to the government. The tax which the Collector of Internal Revenue seeks to recover here was therefore on January 31, 1937, perfectly legal and was in no sense a penalty. When collected by the Bureau of Internal Revenue it is paid into the Treasury of the United States as internal revenue collections. 42 U.S.C. § 1105(a), 42 U.S.C.A. § 1105(a). The tax is not earmarked nor paid into any special fund. 42 U.S.C. 1105(a), 42 U.S.C.A. § 1105(a). Legal on January 31 as a tax, it cannot be converted into a penalty because the taxpayer, by failing to comply with certain required conditions, did not secure the benefit of allowable deductions. The permissible deduction, rather than a penalty, is a reward doubtless designed to encourage prompt payment into the fund established by the state. It is of the nature of permissible deductions from income and other taxes.

In the event, however, that the taxpayer fails to take timely advantage of this benevolence, I am unable to conclude that the tax itself thereby becomes a penalty.

The exceptions to the referee's report and decision are allowed, and the claim of the Collector of Internal Revenue is held valid.

Exception to the trustee.

## In re ZURN.

## No. 20158.

District Court, W. D. Pennsylvania.
March 30, 1939.

Ritchie T. Marsh, of Erie, Pa., referee.

Bryan & Evans, of Erie, Pa., for petitioner.

W. R. Seabrook, of Erie, Pa., for bankrupt.

## SCHOONMAKER, District Judge.

This certificate of review presents the question of the validity of a landlord's claim for priority in · distribution of the sale-price realized on sale of bankrupt's personal property, which had been located on premises rented by bankrupt from the landlord Baldwin, who claims a first lien on the sale-price by virtue of an alleged prior levy on a landlord's distress warrant.

Bankrupt's personal property, which had been on the premises rented by Baldwin to the bankrupt, came into the possession of the trustee, and was sold by the trustee at public sale for $276. This sum was distributed by an order of the referee made on September 24, 1938, which awarded the total sale-price to costs, expenses, and prior claims. No part of the sale-price was awarded to the landlord Baldwin.

The facts are briefly these. Bankrupt conducted a beverage business at 212 E. 12th Street, Erie, Pa., which premises he rented from Baldwin on written lease dated January 13, 1937.

On March 5, 1938, bankrupt prepared and signed his petition and schedules in bankruptcy; but the papers were not actually filed in this court until March 21, 1938. On March 5, 1938, he closed his business and locked the premises at 212 E. 12th Street, Erie. On March 14, 1938, Baldwin issued a landlord's warrant directed to Thomas Clapper, a constable in Erie, directing him to distrain the goods and chattels on the premises and sell the same. On that date the constable went to the premises, found the front door open, and one James Baldwin, an employee or associate of the landlord Baldwin, on the premises. The constable then made his levy on the goods, and directed Baldwin to remove them to the basement of a 12th Street market where the constable later saw the goods and sold a part of them, i. e., the empty beer cases, to Baldwin for $14.

When the trustee was appointed, he took possession of the property of the bankrupt at the basement of the 12th Street market, and sold it at public sale, realizing the sum of $276 covered by the referee's distribution order here being reviewed.

The landlord Baldwin, on April 6, 1938, filed a rent claim with the referee for $235, claiming a preference.

The referee found that the distress made by the landlord Baldwin was illegal and invalid under the authority of Ewald v. Fidelity Title & Trust Company, 43 Pa. Super. 593, which holds that where a landlord and his agent pick a lock of an outer door of the demised premises for the purpose of distraining the tenant's goods, they commit an illegal act; and the distress thus made is contrary to law and is invalid.

That is the precise situation found by the referee to exist in the instant case. The bankrupt locked the door of the premises on March 5, 1938, with a yale lock. This lock was changed and a padlock put on the door. The constable found James Baldwin, ·an associate or employee of the landlord, in possession of the premises on March 14th. Neither the landlord nor James Baldwin took the witness-stand to explain the manner· of entry. The conclusion is irresistible that the landlord made an illegal entry into the premises. No notice of the distress was given the bankrupt.

As Baldwin had no valid lien on the goods of the bankrupt at the time bankruptcy intervened, his claim for priority over costs of administration was properly disallowed. See In Re Philbin, D.C., 53 F.2d 218.

## PER CURIAM.

It is hereby ordered that the order of distribution made by the referee on September 24, 1938, be, and the same is, hereby approved and confirmed.

### EDGEWATER BASIN CO. v. SCHNEIDER et al.

### No. 5434.

District Court, D. New Jersey.

June 6, 1939.

Kohn & Shaw, of Newark, N. J., for plaintiff.

McDermott, Enright & Carpenter, of Jersey City, N. J., for defendant United States Fidelity & Guaranty Co.

John J. Quinn, U. S. Atty., of Trenton, N. J. (by Thorn Lord, Asst. U. S. Atty., of Trenton, N. J.), for defendant Frederick C. Schneider.

FORMAN, District Judge.

Plaintiff is the owner of property used for the storage of boats. Defendant, Frederick C. Schneider, former United States Marshal for the District of New Jersey, seized under process issuing out of this court in favor of third-party libellants the S. S. Empire State, S. S. Shamrock, S. S. America, S. S. Columbia and S. S. Commodore on February 5, 1935, at plaintiff's property where they remained until April 29, 1935, at which time they were sold.

Plaintiff complains of the fact that the fund raised by the sale of these boats has been exhausted by order of this court without reimbursement to itself for wharfage fees, and recovery is sought from the defendant, United States Marshal, and the surety on his bond, United States Fidelity and Guaranty Company.

On March 9, 1935, in response to inquiry of plaintiff, Chief Deputy Marshal, W. B. Snowden, advised it as follows: "I acknowledge receipt of your letter of the 7th instant, and would advise that when these boats are sold bill for wharfage from February 5th, 1935, the day they were seized by me, will be submitted to the court at the rate of $1. per day for each boat. That is the amount allowed as a rule by the court. If it is approved, the same will then be sent you. All it will be necessary for you to do will be to send me bill for same the day sale is made. You do not have to file your claim with the court."

On April 29, 1935, the sale was made and the proceeds were paid into the Registry of the court by the defendant May 14, 1935.

It was not until June 12, 1935, that plaintiff sent a bill to the Marshal, who replied that all the funds had been deposited with the Clerk of the United States District Court, that he had nothing further to do with the monies, and that it would be necessary for plaintiff to file his claim with the Office of the Clerk. Meanwhile, the fund had been distributed by the Clerk so that nothing was available to satisfy plaintiff's claim for wharfage.

It is the position of plaintiff that the Marshal undertook to protect its interest in the disposition of the fund raised by the sale of the boats. It is admitted that plaintiff did not act with promptness, and did not communicate with the Marshal as to the amount of the charges on the day of sale. Its failure so to do resulted in the return of the order for sale by the Marshal without any calculation for plaintiff's wharfage charges in the Marshal's bill of costs. Plaintiff relies on Rule 8 of this court, which provides as follows: "The marshal shall be allowed for the